UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH SALVATORE TRAMAGLINO, | No. 2:15-cv-0374-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from June 13, 2013, through the date of the final administrative decision.  (ECF No. 17.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 21.)

////

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 10.)

For the reasons that follow, the court DENIES plaintiff's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

I. BACKGROUND

Plaintiff was born on May 24, 1952, and speaks English. (Administrative Transcript ("AT") 163, 167.)[2] He has been incarcerated for much of his adult life, and has effectively no work history. (AT 35, 157-62.) On June 13, 2013, plaintiff applied for SSI, alleging that his disability began on June 12, 2013, at 61 years of age. (AT 53, 66.) Plaintiff alleged that he was disabled primarily due to head trauma, breathing problems, hepatitis B and C, back pain, and mental health issues, including memory loss. (AT 53.) After plaintiff's application was denied both initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on August 4, 2014, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified. (AT 22-52.) The ALJ issued a decision dated September 5, 2014, determining that plaintiff had not been under a disability, as defined in the Act, between June 13, 2013, and the date of that decision. (AT 6-17.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on December 18, 2014. (AT 1-6.) Plaintiff then filed this action in federal district court on February 16, 2015, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ erred in finding as a factual matter that plaintiff had at least a high school education; (2) whether the ALJ erred in failing to further develop the record as to plaintiff's educational level; (3) whether the ALJ improperly weighed the opinion of consultative examining physician Dr. Moore; (4) whether the ALJ erred in finding the third party statement of plaintiff's mother not credible; (5) whether the

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

ALJ erred by failing to discuss the opinion of non-examining physician Dr. Olaya; and (6) whether the ALJ erred by failing to find that plaintiff had an antisocial personality disorder that met or equaled Listing 12.08.

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). However, the court may only consider the reasons given by the ALJ for his decision and "may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630.

IV.    DISCUSSION

    A.    Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[3] At the first step, the ALJ concluded that plaintiff had not

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the
    claimant is found not disabled. If not, proceed to step two.

3

engaged in substantial gainful activity since June 13, 2013, the application date. (AT 11.) At step two, the ALJ found that plaintiff had the following severe impairments: "musculoskeletal limitations secondary to strain and degenerative changes of the spine, adjustment disorder, cognitive disorder and rule out polysubstance abuse, in sustained full remission. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 12.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c). The claimant is able to stoop frequently. There are no other postural limitations. He however, is limited to simple repetitive tasks with frequent interaction with supervisors, occasional interaction with coworkers, and occasional to rare interaction with the public.

(AT 13.)

At step four, the ALJ determined that plaintiff had no past relevant work. (AT 16.) At step five, the ALJ found that in light of plaintiff's age (closely approaching retirement), education

---

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

(at least high school), work experience, and residual functional capacity, that there were jobs that exist in significant numbers in the national economy that plaintiff could perform.  (Id.)  Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from June 13, 2013, through the date of the ALJ's decision.  (AT 17.)

   B.  Plaintiff's Substantive Challenges to the Commissioner's Determinations

     1 . *Whether the ALJ erred in finding as a factual matter that plaintiff had a high school education or above.*

Plaintiff first argues that the ALJ improperly concluded as a factual matter that plaintiff had an education level equivalent to high school or above because that determination was not based on substantial evidence.  Plaintiff asserts that because the evidence shows that he did not complete high school and did not obtain a GED, and given his advanced age and complete lack of work history, the ALJ should have found him disabled under the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids").

The court's review of an ALJ's factual determination is limited to determining whether such a finding was supported by substantial evidence.  See Orn, 495 F.3d at 630; Costa v. Comm'r of Soc. Sec., 525 F. App'x 640, 642 (9th Cir. 2013) (unpublished) ("[W]e defer to the ALJ's factual determinations . . . .").  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund, 253 F.3d at 1156 (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti, 533 F.3d at 1038.

Here, beginning with his initial disability report, plaintiff maintained that he had obtained a high school equivalent education, an assertion he repeated every time the question of his educational attainment came up in the medical record and over the course of the administrative process prior to the hearing.  (AT 64, 66, 76, 79, 169, 273.)  Even the letter brief from plaintiff's administrative counsel filed with the ALJ prior to the hearing conceded that it "appears from the record that [plaintiff] obtained a GED in prison."  (AT 227.)

At the hearing, apparently for the first time, plaintiff provided testimony that could be construed as calling into question whether he had received a high school education.  (AT 26.)

5

However, plaintiff did not testify that he did not have a high school education, merely that he did not have a diploma or other proof in his possession and that he did not know if he had passed the GED test or received a diploma. (Id.)  In fact, plaintiff repeatedly stated that he had done substantial school work and taken tests while in prison and that he was entitled "to receive a high school diploma for the work that [he] was turning in." (AT 34; see also AT 26, 35, 44-46.) While plaintiff's testimony during the hearing may have somewhat conflicted with the body of evidence in the record indicating that plaintiff had a high school level education, it was for the ALJ to reconcile that apparent conflict, see Edlund, 253 F.3d at 1156, which he did by finding that plaintiff had at least a high school education (AT 16). Given the above evidence in the record, the ALJ's conclusion was supported by substantial evidence. See Orn, 495 F.3d at 630.

Furthermore, it should be noted that under the Grids the inquiry regarding plaintiff's education level was not necessarily whether plaintiff had a formal diploma or technically received a GED, but whether plaintiff's educational background was equivalent to a high school education. Indeed, given plaintiff's lack of work history, medium work RFC, and the fact that plaintiff was closely approaching retirement age, he would have been found disabled under the Grids if he had a limited or less than limited education, but not disabled if he had a high school or higher education. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rules 203.02, 203.06. The relevant regulation makes it clear that a claimant's education level may be defined by actual ability and not necessarily by the numerical grade level he or she completed. 20 C.F.R. § 416.964.[4]

---

[4] 20 C.F.R. § 416.964 provides, in pertinent part:

> (a) General. Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability. However, if you do not have formal schooling, this does not necessarily mean that you are uneducated or lack these abilities. Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education. Your daily activities, hobbies, or the results of testing may also show that you have significant intellectual ability that can be used to work.

6

Here, as discussed above, it would have been entirely appropriate for the ALJ to conclude based on plaintiff's testimony and other statements regarding his education in the record that he had completed the necessary classwork to receive a GED, therefore meaning he had a high school education within the meaning of the regulations.

---

(b) How we evaluate your education. The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education. In evaluating your educational level, we use the following categories:

….

(3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

(4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

….

(6) Information about your education. We will ask you how long you attended school and whether you are able to speak, understand, read and write in English and do at least simple calculations in arithmetic. We will also consider other information about how much formal or informal education you may have had through your previous work, community projects, hobbies, and any other activities which might help you to work.

    2.  *Whether the ALJ erred in failing to further develop the record as to plaintiff's education level.*

  Plaintiff next contends that the ALJ failed to adequately develop the record because he did not attempt to verify whether plaintiff had actually obtained a GED by either contacting the California Department of Education himself or ordering plaintiff's attorney to do so. This argument is devoid of merit.

  "The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). "When the claimant is unrepresented, . . . the ALJ must be especially diligent in exploring for all the relevant facts." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

  It is well established that a claimant bears the burden of providing medical and other evidence that support the existence of a medically determinable impairment. Bowen v. Yuckert, 482 U.S. 137, 146 (1987); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits."). Indeed, it is "not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." Yuckert, 482 U.S. at 146 n.5.

  Nevertheless, as the Ninth Circuit Court of Appeals has also explained:

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant. When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts ... The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry.

Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing,

or keeping the record open after the hearing to allow supplementation of the record." Id. However, as some courts have persuasively observed, the ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997) (citation omitted).

Here, contrary to plaintiff's argument, evidence of whether plaintiff actually took a GED test, or had a GED or high school diploma on file with the California Department of Education was not conclusive. See 20 C.F.R. § 416.964. As discussed above, substantial evidence supported the ALJ's determination that plaintiff had a high school equivalent education even without such evidence in the record.

Furthermore, plaintiff's counsel did not request that the record be kept open to allow plaintiff to obtain and submit additional evidence regarding his education level, nor did plaintiff submit any such evidence to the Appeals Council. Throughout the course of the administrative process, plaintiff was repeatedly asked about his educational attainment and consistently responded that he had a high school education. (AT 64, 66, 76, 79, 169, 273.) Accordingly, the ALJ was not required to further develop the record in the manner plaintiff advances.

   3.   *Whether the ALJ erred by discounting the opinion of consultative examiner Dr. Moore.*

Third, plaintiff asserts that the ALJ erred by improperly assigning "no weight" to the consultative examining opinion of Dr. Moore.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

////

////

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830.

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Dr. Moore conducted a number of psychological tests, including the Wechsler Adult Intelligence Scale-IV, the Wechsler Memory Scale IV, and Trails A and Trails B. (AT 276.) Based on the objective testing results, Dr. Moore opined several functional limitations. First, that plaintiff's ability to understand and carry out simple instructions "may be mildly impaired" and that this "may increase to moderate and possibly to marked" if plaintiff is required to hold the instructions in memory. (AT 280.) Dr. Moore opined further that plaintiff's ability to perform complex tasks is "likely at least moderately impaired and possibly markedly impaired." (AT 280.) Dr. Moore also opined that plaintiff's ability to maintain concentration, persistence and attention, his ability to respond appropriately to co-workers, supervisors and the public, his ability

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527.

1  to respond appropriately to attendance and safety requirements, and his ability to deal with
2  changes in a routine setting were moderately impaired.  (AT 280.)  Finally, Dr. Moore opined that
3  plaintiff's ability to withstand day-to-day stress and pressures of working was "likely at least
4  moderately impaired" and that he would benefit from another person handling his financial
5  affairs.
6       In addition to opining the above limitations, Dr. Moore noted that despite the ease with
7  which plaintiff completed different sections of Trails B, plaintiff failed to complete the test and
8  told her: "That's all you're gonna get from me."  (AT 278.)  Dr. Moore also specifically
9  cautioned before providing her opinion that:  "*The following scores and functional ratings should*
10 *be interpreted with great caution, as it is the evaluator' opinion that the claimant did not put*
11 *forth appropriate effort and did not take the evaluation seriously.*"  (AT 276 (emphasis in
12 original).)  Dr. Moore also questioned plaintiff's credibility on his claims that he had stopped
13 using methamphetamines and heroin, and opined that some of his symptoms could be due to
14 current use of controlled substances.  (AT 278-79.)
15      While Dr. Moore completed her report and gave functional limitations based on the
16 evidence before her, she specifically stated that "[i]t is impossible to tell when and to what degree
17 malingering overlap[s]" with plaintiffs genuine impairments.  (AT 279.)  Dr. Moore in no way
18 accounted for plaintiff's malingering or possible substance abuse in the functional limitations she
19 opined and affirmatively undercut the clinical findings she based those functional limitations on
20 as well as the functional limitations themselves.  The ALJ noted these stark inconsistencies in Dr.
21 Moore's opinion and assigned it no weight.  (AT 15.)  This was a specific and legitimate reason
22 for discounting Dr. Moore's opinion regarding plaintiff's mental functional limitation.  See
23 Tommasetti, 533 F.3d at 1041 (holding that incongruities between a treating physician's objective
24 medical findings and that physician's opinion constitutes a specific and legitimate reason for an
25 ALJ to reject that physician's opinion).  Accordingly, the ALJ did not err in assigning Dr.
26 Moore's opinion no weight.
27 ////
28 ////

4. *Whether the ALJ erred in finding the third party statement of plaintiff's mother not credible.*

Fourth, plaintiff contends that the ALJ erred by not properly discussing the third party statement of plaintiff's mother and by not articulating any reason for finding her statement not fully credible or persuasive.

"[C]ompetent lay witness testimony cannot be disregarded without comment" and "in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal quotation and citation omitted). Here, the ALJ summarized the third-party statement of plaintiff's mother in detail, clearly indicating that he considered the information. (AT 14.) Moreover, plaintiff's mother's statement essentially echoed plaintiff's own testimony, which the ALJ found not fully credible—a determination that plaintiff does not challenge on appeal. The ALJ gave several reasons for discounting plaintiff's testimony including that plaintiff's physical conditions were well controlled by medication, the largely conservative treatment plaintiff received, the lack of objective medical evidence corroborating his claims of disabling symptoms, and the existence of evidence in the record that plaintiff was a malingerer. (AT 14-15.) These were all specific, clear, and convincing reasons for discounting plaintiff's testimony, which were equally germane to the third-party testimony of plaintiff's mother. As such, any error in not explicitly re-stating, or incorporating by reference, the reasons given for discounting plaintiff's testimony with respect to plaintiff's mother was harmless and remand is not warranted. See Molina, 674 F.3d at 1115-22.

5. *Whether the ALJ erred in failing to discuss the opinion of non-examining physician Dr. Olaya.*

Fifth, plaintiff contends that the ALJ erred by failing to discuss the non-examining opinion of Dr. Olaya. Plaintiff contends that Dr. Olaya found that plaintiff suffered from a severe learning disorder and personality disorder. However, a review of Dr. Olaya's opinion shows that she found that plaintiff's mental impairments were non-severe, that plaintiff was malingering, and

////

////

opined no functional impairments as a result of plaintiff's mental impairments. (AT 59.)[6] While the ALJ did not explicitly address and weight Dr. Olaya's opinion, he based his RFC determination on a "careful consideration of the entire record." (AT 13.) Furthermore, the ALJ addressed and assigned "little weight" to the opinion of Dr. Colsky, a non-examining physician who reviewed Dr. Olaya's findings and likewise opined that plaintiff had no mental impairments based on Dr. Olaya's opinion. (AT 15, 59, 72.) To the extent that the ALJ erred in not specifically weighing Dr. Olaya's opinion, he did so in plaintiff's favor because that physician opined that plaintiff had no severe mental impairments. (AT 59.) In addition, Dr. Olaya's opinion formed the basis for the State agency determination that plaintiff was "not disabled" during the initial disability determination and on reconsideration. (AT 15, 53-65, 67-78.) Therefore, any error in considering the opinion of Dr. Olaya was harmless. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

      6. *Whether the ALJ erred by not finding that plaintiff had an antisocial personality disorder that met or equaled Listing 12.08*

Finally, based on his contention that the ALJ erred in his consideration of Dr. Moore's opinion, plaintiff argues that the ALJ erred further by failing to consider whether plaintiff's impairments met or equaled Listing 12.08.

Plaintiff "bears the burden of proving that . . . [he] has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). "For a claimant to show that his impairment

---

[6] While the Disability Determination Explanation form does state that plaintiff's mental impairments were found to be severe (AT 60), the actual notes produced and signed by Dr. Olaya clearly state that plaintiff's mental impairments were not severe. (AT 59.) Even to the extent that this ambiguity in the initial disability determination could be attributed to Dr. Olaya rather than another reviewing physician, such an ambiguity was for the ALJ to resolve, which he did when discussing the opinion of Dr. Colsky—who affirmed Dr. Olaya's finding of non-severity on reconsideration of plaintiff's application—and finding that that physician had opined that plaintiff's mental impairments were non-severe. (AT 15.)

matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify . . . For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990).

Furthermore, a determination of medical equivalence must rest on objective medical evidence. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of equivalence must be based on medical evidence only."); Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) ("Medical equivalence must be based on medical findings…A generalized assertion of functional problems is not enough to establish disability at step three."); 20 C.F.R. § 404.1529(d)(3) ("In considering whether your symptoms, signs, and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment, we will look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria. However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment."). Finally, "[t]he mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability." Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985). Instead, all of the specified medical criteria must be met or equaled. Id. at 1550.

Here, plaintiff does not offer any evidence that plaintiff meets the requirements of listing 12.08 except the diagnosis in Dr. Moore's opinion, which as discussed above, the ALJ properly discounted. The ALJ carefully considered all of the Listings for which there was medical evidence sufficient to perform an analysis. (AT 12-13.) Plaintiff's conclusory argument does not contain any indication of what additional functional limitations plaintiff had which would have met the requirements of listing 12.08, much less objective evidence that plaintiff met them. Even had the ALJ accepted Dr. Moore's diagnosis, such a diagnosis, standing alone, is clearly insufficient. Key, 754 F.2d at 1549.

////

In addition, the ALJ considered plaintiff's impairments under Listings 12.02 and 12.04, which contain the exact same "paragraph B" criteria required to meet or equal Listing 12.08. (AT 12-13); see 20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 12.02, 12.04, 12.08. The ALJ determined that plaintiff's impairments did not meet or equal the "Paragraph B" requirements with regard to any of the areas of functioning addressed in those listings, and plaintiff does not contest the ALJ's determination. (AT 12-13.) Accordingly, plaintiff's argument that the ALJ erred at step three is not well taken.

V.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 21) is GRANTED.
3. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: April 28, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE